Good morning, your honors. My name is Ed Sheehy Jr. I am representing the defendant and appellant Jeremy Shane Turner. Good morning. And I would like to reserve two minutes. In this particular case, we are appealing both Mr. Turner's conviction, a three-count conviction of conspiracy to possess more than 500 grams of methamphetamine with intent to distribute possession of 500 grams with intent to distribute a methamphetamine. And we're also challenging in our third issue whether the government met its burden of proof as to the 1,350 grams that was found by the jury on counts one and two. Our final issue is alternatively whether or not Mr. Turner's sentence was reasonable. And I would, unless the Court has questions on our first three issues, I would submit them on the basis of the briefs that have been filed and confine my argument to that last issue as to whether or not his sentence was reasonable. That's fine. In this particular case, Mr. Turner had a prior drug conviction that then brought about the government's filing and 851 information, which then raised his mandatory minimum from 10 years to 20 years. Now the government says that his the maximum exposure was 30 years, correct? 30 years on count three. And I believe the government, and I have to concede that the government is correct on that. My argument had been that that was 10 years. And I am wrong because the Attorney General under the CFRs has made methamphetamine a Schedule II substance, which then would have that governed by 21 U.S.C. 841 D1C, which with the prior conviction makes it a maximum of 30 years. The question, though, then becomes on all three counts, since he was sentenced concurrently, is whether or not the 300-month sentence that was imposed by the district court is a reasonable sentence. And it is our position that that is an unreasonable sentence. Now the government recently brought to this Court's attention the decision in the United States v. which says that a court can, under 3553, sentence outside the advisory guideline range as long as it's considering those factors. Well, in this particular case, the advisory guideline range did not apply because it was an advisory guideline range of 163 months to 210 months, which would be below the mandatory minimum. And, of course, the statute trumps those guidelines. Let me just ask you this in terms of just – I think I understand your argument. But now that you've conceded that the 30-year is the maximum on that, under the what I would call be careful what you wish for, if it were sent back, could your client face 30 years? As a maximum, yes, he will. I don't know because there isn't a mandatory minimum on that particular offense. I mean, see, I think generally speaking, you don't penalize people for taking an appeal. But the law has been – you know, it has obviously been moving in this direction in terms of the Booker-Fan-Fan and all the – you know, I think now we've got Zavala where it hasn't – the mandate hasn't issued. But it's – there's been a lot of changes that, you know, I think that your client could maybe face 30 years going back. Well, but he couldn't get that on the – well, yes, he could get that on the first two counts. But, I mean, it would then be a question of what is a reasonable sentence. Well, apparently the – I think the question that, you know, Judge Kellman is really asking is have you considered and your client considered the risk he's facing by taking this appeal? In other words, that he could get a higher sentence on remand. I believe he's fully aware of that risk. And you're fully aware of that. And he is aware of it. But the district court in determining this sentence, one of the comments it made was that the statutory minimum was not adequate for these offenses. And it was talking about all three offenses. And it even went on – and this is on page 15 of the excerpts – to say that it felt that the advisory guidelines were woefully inadequate. The court's comment about the statutory minimum was that that was inadequate as punishment for the offense of conviction. And, of course, as we've argued in our brief under 18 U.S.C. 3582 in imposing a term of imprisonment, the court is to consider that imprisonment is not an appropriate means of promoting correction and rehabilitation. And the court here was basically imposing this sentence as a means of punishment because, again, on page 15 of the excerpts, the court said that it had an obligation to fix a sentence that will impose just punishment for the offenses of conviction and will serve to protect the public from further criminal conduct by you. Now, just punishment of 20 years or 240 months would have been required under the law. And that would have protected the public because this is a young man that was 28 at the time of sentencing. He's probably, with a 25-year sentence, going to be 53 before he would ever get out of prison. With a 20-year sentence, he's going to be in his late 40s before he's ever going to get out of prison. Mr. Sheehy, you know, to you and me, 20 years, for God's sake, that's a long, long time. But we have to review for reasonableness, not whether you and I would have imposed that sentence, because I can tell you I would not have. But standard of review seems. Well, the reasonableness thing is to be individualized sentencing. And I believe the court here did not consider the individual that was in front of it because its big issue was his lengthy criminal history. Well, except for if you look at it, you've got the 3553 factors, correct? Right. And I think that you do attack whether it was individualized. I do think that U.S. v. Noses Gun, I love the name of that case, does say that, I mean, you have to cover them, but you don't have to say I'm going one, two, three, four, as far as that goes. But there were comments in the record in terms of that the court goes through, you know, talks about what the statutory minimum is, you know, considers the guidelines as is required, and then makes comments about the nature and circumstances. I think there are comments to the effect that your client is victimizing a, you know, a group of individuals that are predisposed towards substance abuse, and that's part of a long history of criminal activity, referring that he doesn't have remorse, makes comments that he displayed absolutely no sense of remorse, that he's an extremely dangerous person, woefully, and that the guidelines are woefully inadequate to address the severity of a combination of offenses in conjunction with his background. So we're not, that wouldn't apply to everyone. So there are, there is language in here that does seem to be individualized as to your client. Do you want to respond to that? Well, first I would respond onto is criminal history, because that actually went into the guideline calculation, and it went into the 851 information, which gets us to the mandatory minimum of 20 years. I don't believe that there's anything in the record that supports the court's comments that the people he was dealing with are. You know what, I'm actually sorry, too, that you're at, I've taken some of your time. You wanted to reserve some, right? Right. Okay. Well, why don't you reserve the balance, and I'll give you two minutes on rebuttal. Okay. Thank you. Thanks. Good morning, Your Honors. My name is Joe Thagard. I'm an assisting United States attorney from the Great Falls office in Montana. I represent the government in this matter. Like Mr. Sheehy, unless the panel has some questions about the first three issues which he raised, I'll confine my comments to the sentencing in this issue. And as we pointed out in our 28J letter, this matter essentially turns on the reasonableness of the sentence imposed here and the procedures which the court followed. And in this instance, the court properly calculated a guideline range for this defendant. It also took into account the mandatory minimum caused by the 851 information filed in this matter. And then it proceeded to make its individualized findings under 3553A. And I think that the record is clear. It made extensive findings in that regard. It closely considered this individual as an individual. It looked at his past, the circumstances of his crimes, and it concluded that given these circumstances, that the guideline range and the mandatory minimum were inadequate. And ultimately, in viewing this, I can only conclude that this is what Booker directed the court to do, and that was engage in individualized sentencing. The court did so. And it's an appropriate and reasonable sentence in this matter. I'll resume my seat unless the panel has any questions for me. No. There don't appear to be any questions. Thank you. Thank you. Well, very briefly, I don't believe that the court did engage in individualized sentencing because, as I said,    And that's what I'm trying to get at. Yes. Well, let me ask this, though. What more is the court required to do, to engage in individualized sentencing, aside from what Judge Haddon did in this case? I mean, what more could he have done to individualize the case? I think that what he could have done was determined that a reasonable sentence was 240 months, because that was... No, that's the result. My question is, you say he didn't engage, you know, in a reasonable review. What more could he have done besides come to a different conclusion? I mean, he went through all the factors in the statute. He gave his thought on each one, and he came to a conclusion. Now, you disagree with this conclusion. Maybe we do, too. But the point is, I mean, how can you say that the exercise he went to was not reasonable? Well, I'm not sure it's a question of the exercise. It's a question of whether the sentence itself is reasonable. And the only reason you've given it so far why it's not reasonable is because you disagree with it. No. What I pointed out was that the guideline calculation already included his criminal history. Right. Secondly... Well, we know now that the guideline calculation is only advisory. Right. And he took that into account. Now, what more does he have to, you know, what more deference does he have to give to the guideline determination? Well, he says that one of his comments was that Mr. Turner was engaged in this solely for money. There's nothing in the record to support that. There's absolutely nothing in the record. Well, it is a reasonable inference, isn't it? I don't believe so. Can you give us some other reason why he would have been engaged in this? Was it for the health of others? It was for his addiction. As I pointed out on my third issue... It was for money to support his addiction. I don't know that he was getting money for what he was doing to support his addiction. Well, I think, but he's got that, doesn't he have that bag? There's a bag that has cash in it or something. He has a bag that has some cash in it, yes. It's more than the $20 I usually carry at any given time. Yeah, but he also had an explanation for that, that he was engaged in building these custom motorcycles. They gave both the highway patrolmen, and he told the people that he was living with in Browning. But I also think that it's not individualized sentencing to be saying that he was picking on these people on the reservation. I mean, methamphetamine is a major drug in Montana. It's not just on the reservation. And I do believe that to engage in individualized sentencing, you can't start from the criteria that the advisory guideline is willfully inadequate or that the statutory minimum is inadequate. All right, I think we have your argument well in mind. I appreciate both arguments, and this matter will now stand submitted. Thank you. Thank you. United States of America v. Jaime Martinez Huertas, case number 0530462.
judges: Thompson, Tashima, Callahan